COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS

§

MELINA CASTRO, IN HER OFFICIAL
CAPACITY AS AN ELECTED                                    §
MEMBER OF THE COUNC IL OF THE                  No. 08-07-00074-CV
CITY OF EL PASO,                                         §

§

Appellant,                          §                        Appeal from

346th District Court

v.                                                      §

of El Paso County, Texas

CHARLES McNABB, CITY ATTORNEY          §
FOR THE CITY OF EL PASO, TEXAS,                  (TC # 2005-8459)
IN HIS OFFICIAL CAPACITY,                       §

Appellee.                           §

# **O P I N I O N**

Melina Castro, in her official capacity as an elected member of the El Paso City Council,

appeals from an order granting a plea to the jurisdiction filed by Charles McNabb in his official

capacity as the El Paso City Attorney. She also appeals an order requiring her to pay attorney's fees

in the amount of $30,000. Because of the nature of the underlying proceedings, a detailed factual

recitation is necessary.

## **FACTUAL SUMMARY**

Rita Rodriguez has served the City of El Paso as both an assistant city attorney and as the El

Paso City Attorney. On November 17, 2004, she filed suit against the City alleging wrongful

termination by then-acting City Attorney, Lisa Elizondo. The City's insurance carrier retained

outside counsel, Steve Blanco, to represent the City in that suit. On June 21, 2005, the City Council

removed Elizondo and appointed McNabb as City Attorney. McNabb had previously served as City

Attorney from 1997 to 2003. McNabb formally advised City Council on July 5 about a potential conflict of interest in the Rodriguez litigation because he had been her supervisor when she was an assistant city attorney and he had been identified as a person with knowledge of relevant facts. He told the council members that if subpoenaed, he would testify as to Rodriguez's competence but he would not testify regarding her discrimination claims. McNabb advised that he would not involve himself in any aspect of the litigation unless he received waivers from both the City and Rodriguez. The City Council voted unanimously to waive potential and existing conflicts of interest. Blanco continued to represent the City in the Rodriguez litigation and he appeared before City Council on five occasions in connection with that suit. On September 27, 2005, the City Council voted to settle the Rodriguez suit for $500,000[1] upon the advice of Blanco and the insurance carrier. Castro voted against the settlement. The case was settled and Rodriguez's suit was dismissed.

On November 9, 2005, assistant city attorney John Batoon wrote a letter to Castro and two other city council members at the request of Mayor John Cook. The letter cautioned them about potential violations of the Open Meetings Act.[2] The next day, Castro responded with a five-page letter to McNabb. She first objected to the Batoon letter and accused McNabb and his staff of committing violations of the Open Meetings Act. Castro devoted the remainder of her letter to questioning McNabb's relationship with Rodriguez and his involvement in the suit. She then demanded that McNabb produce documents and information, including all litigation discovery documents, a copy of Blanco's evaluation letter, communications by McNabb or his staff with the insurance carrier, McNabb's phone records, and all correspondence and email with Rodriguez. Castro told McNabb that his conduct "**implicates** severe and gross misconduct on your part as legal

---

[1]  The City paid $200,000 of the settlement and the insurance carrier paid the balance.

[2]  TEX.GOV'T CODE ANN. §§ 551.001-551.146 (Vernon 2004 & Vernon Supp. 2009).

counsel for the City of El Paso -- thus I advise you to seek legal counsel before responding."

[Emphasis in original]. She added, "Your failure to make full disclosure with regard to your involvement in the Rita Rodriguez settlement will be considered an aggravated **breach of fiduciary duty** and **legal malpractice**." [Emphasis in original]. In addition to these accusations, Castro asked McNabb to disclose whether he had received anything of value in exchange for recommending that the City settle the Rodriguez suit. Although she did not believe her requests were subject to the Texas Open Records Act,[3] Castro specifically requested that McNabb "encourage the City Council to request an opinion from the Attorney General of Texas as to all questions in this request that you refuse to answer for any reason based on privilege, attorney client relationship or any other such defensive position that you may allege."

On November 14, Travis Ketner wrote McNabb to advise him that he--Ketner--represented Castro and that she was contemplating litigation against McNabb for breach of fiduciary duty and legal malpractice in connection with the City's settlement of the Rodriguez suit. Ketner said Castro needed the information she requested in the November 10 letter for two reasons: (1) to evaluate the documents upon which McNabb based his settlement recommendation; and (2) to evaluate the potential for civil claims against McNabb personally. Ketner reiterated that Castro did not believe her request for the information was covered by the Texas Open Records Act, but to "please consider this letter as my authorization to you to proceed pursuant to provisions of that statute." If McNabb did not comply, Castro was prepared to test the denial of access to public documents under the Open Records Act. Ketner gave McNabb until November 18 to provide a "favorable response."

Ketner wrote to McNabb again on November 19. He reiterated that Castro was not making

---

[3] The Texas Public Information Act is found at TEX.GOV'T CODE ANN. §§ 552.001-.353 (Vernon 2004 & Vernon Supp. 2009). The Act was formerly known as the Texas Open Records Act. Castro refers to the Act by its former name in her correspondence.

an Open Records request but said that if McNabb disagreed, Castro would enforce her request for information under the provisions of the Act. Referencing a statement by McNabb that he represented the City, not the individual council members, Ketner warned that Castro would vigorously contest McNabb's "interpretation" in a declaratory judgment action. On November 20, Ketner sent two more letters. In the first, he advised McNabb that the time in which to request an attorney general opinion was about to expire: "If you fail to request an Attorney General's Opinion within ten business days and fail to notify me of such, this information is deemed to be public." Ketner also demanded that McNabb answer all questions addressed to him "personally." In the second letter, Ketner notified the City that he intended to advise Castro of her powers under Section 3.8 of the City Charter, including the power to issue subpoenas and administer oaths. Ketner expressed his opinion that all of Castro's requests were covered by Section 3.8.

Because Castro's requests implicated the Texas Public Information Act (TPIA), the City Attorney's Office forwarded the letters to Joyce Wilson, the City Manager. Wilson is the City's officer for public information.[4] On November 23, the City Attorney's Office, on behalf of the City, requested an opinion from the Texas Attorney General on the TPIA request. The request stated that the City had no objection to releasing most of the documents which could be identified as responsive to Castro's requests or which answered a specific question. For some of Castro's requests, the City did not have documents. The City refused to disclose documents which it believed to be exempt from disclosure under Sections 552.101, 552.107, and 552.111. The City also acknowledged that Castro, as a City Council member, was entitled to records which are not available to the general public. The City Attorney's Office forwarded a copy of the request to Castro along with a cover

---

[4] The chief administrative officer of a governmental body is the officer for public information, except as provided by Subsection (b). TEX.GOV'T CODE ANN. § 552.201.

letter advising her that she was entitled to listen to tapes of the executive sessions and that approximately 870 pages of documents were available for her to review and copy.

On November 28, Castro sent notice to McNabb that she intended to file a declaratory judgment action with respect to her rights to obtain access to the documents in the Rodriguez litigation file. She also gave notice that she would seek a judicial declaration regarding her entitlement "pursuant to the grant of authority in Section 3.8 of the City Charter . . . to review any and all documents prepared by or for the City of El Paso in connection with litigation claims against the City." The notice was placed on the City Council Agenda for December 6. At that meeting, Mayor Cook advised Castro that she had been given the opportunity to review the records. But instead of reviewing the records, Castro filed a declaratory judgment action against McNabb on December 7. In the petition, Castro echoed the allegations made against McNabb in her letters and assailed his competence to serve as City Attorney. The petition alleged that McNabb advised the City Council that he had a conflict of interest in the Rodriguez litigation, and:

> [I]n a severe breach of his fiduciary duties to the elected members of City Council, failed to make full disclosures, either verbally or in writing as to the basis for his conflict of interest and that he did not possess the essential knowledge and legal skills necessary to give competent legal advice in employment law legal issues. Upon incomplete and perhaps false information to be discovered in these proceedings, council voted to waive Respondent McNabb's conflicts of interest.

Castro also alleged her belief that McNabb did not inform members of City Council about Blanco's evaluation letter because it contained information which conflicted with McNabb's recommendation to settle the lawsuit. She claimed she had tried to obtain the letter and other documents in the Rodriguez litigation file but McNabb had refused her request. She then sought a judicial declaration that:

1. McNabb had an attorney-client relationship with her;

2.  McNabb had a fiduciary duty to make a full and complete disclosure prior to seeking a waiver of his conflict of interest with respect to the Rodriguez litigation; and

3.  Castro had a right to see any and all documents created or obtained in connection with the City's defense of the Rodriguez litigation, including settlement documents, evaluation by outside counsel, phone records of counsel, and email communications of transactions of McNabb and his assistants.

On January 25, 2006, Castro contacted the City to arrange a time to review the records identified as public records.  It is unclear from the record whether Castro kept the appointment.[5]

The Attorney General issued an informal letter ruling on February 3 in response to the City's request.  TEX.ATTY.GEN. OR2006-01160, 2006 WL 332305 (2006).  The Attorney General found that an official of a governmental body who, in an official capacity, requests information held by the governmental body, does not act as a member of the public in doing so.  *Id.*  Thus, exceptions to public disclosure under the Act do not control the right of access of an official of a governmental body to information maintained by the governmental body.  *Id.*  The Attorney General concluded that Castro was seeking the information in her official capacity and to the extent she had requested records of the City, she had an inherent right of access.  *Id.*  Noting that the release of the information to Castro was not a release to the public, the Attorney General cautioned Castro to maintain the documents in the same manner as they were maintained by the City.  *Id.*, *citing* TEX.GOV'T CODE ANN. § 522.352 (criminal penalties imposed for release of confidential information to a person who is not authorized to inspect the records).

On February 6 and again on February 22, the City wrote Castro asking her to schedule a time to review the records in accordance with the Attorney General's opinion.  The record does not reflect

---

[5]  McNabb asserts in his brief that Castro and Ketner reviewed over 800 pages of public documents related to the Rodriguez litigation on January 30, 2006, but we have been unable to find evidence supporting this assertion in the record.

whether Castro reviewed the records at that time. The City Council then investigated Castro's allegations. On February 14, it passed a motion stating:

> (1) the settlement in the case of Rita Rodriguez was fair, equitable and beneficial to the City of El Paso;
>
> (2) The City of El Paso was well informed of the risks and liabilities associated with the Rodriguez litigation;
>
> (3) The City is satisfied that Charles McNabb made a full and complete disclosure of any potential or existing conflicts of interest that may have existed in this case; and
>
> (4) The evaluation letter which was prepared by outside counsel in the Rita Rodriguez matter confirmed that the claim made by Rodriguez was not frivolous and the evaluation was consistent with the recommendations that were made by the insurance carrier representing the City, the City Attorney's office, the mediator, and the outside attorney representing the Plaintiff and the City.

Castro amended her petition for declaratory judgment on February 21. As she had requested in the original petition, Castro sought a declaration that McNabb had an attorney-client relationship with her and owed her a fiduciary duty to make complete disclosure of his conflict of interest with respect to the Rodriguez litigation. With regard to her rights concerning the Rodriguez litigation file, Castro added a claim that she had a right to review the file *with the assistance of private legal counsel*. She also sought declarations that the Texas Open Records Act was inapplicable and that the City Council's action excluding her from certain executive sessions was unlawful. Consistent with her original petition, Castro's prayer was limited to requesting a declaration that she had a right to review the Rodriguez litigation file.

On March 2 and 3, Castro reviewed the entire Rodriguez litigation file. She was told that Steve Blanco would be available by telephone if she had questions, but the record does not reflect whether she contacted him.

McNabb filed an answer to Castro's petition and included a plea to the jurisdiction. He also

filed a motion to dismiss pursuant to Section 101.106(f) of the Civil Practice and Remedies Code.

The issues were submitted to the trial court for resolution and the court entered an order in which

it found:

> 1. Petitioner Melina Castro was not acting with the authorization of the City Council of the City of El Paso when she initiated this litigation and therefore was not acting in her official capacity.
>
> 2. Respondent Charles McNabb has been wrongly named as a party by Petitioner Melina Castro. The Court finds Petitioner's alleged claims against Respondent should have been brought against the City of El Paso under § 101.106 of the TEX.CIV.PRAC.REM.CODE. Any alleged conduct of Respondent was within the general scope of his employment as the City Attorney for the City of El Paso.
>
> 3. On December 14, 2005, the Respondent filed his answer and advised Petitioner that she had not properly named the Respondent in this cause of action. On December 30, 2005, Respondent requested Petitioner amend her pleadings. Petitioner refused. This Court finds according to § 101.106(f) TEX.CIV.PRAC.REM. CODE, this the [sic] suit against McNabb is dismissed in its entirety.
>
> 4. Petitioner Melina Castro has no right to seek relief from this Court for the matters enumerated in her Amended Petitioner [sic] for Declaratory Judgment. Petitioner improperly seeks this Court to adjudicate matters that can or have already been determined by the City of El Paso, the City Council and the Attorney General's Office of the State of Texas. Accordingly, the Court finds that Petitioner lacks standing and therefore, the Court lacks subject matter jurisdiction.
>
> 5. This Court finds Respondent Charles McNabb is entitled to recover all applicable costs of Court and reasonable and necessary attorney's fees from Petitioner Melina Castro, according to § 37.009 TEX.CIV.PRAC.&REM.CODE, and other applicable provisions, to be determined by this Court. The Court orders Respondent to prepare an affidavit of reasonable and necessary attorneys fees and costs incurred in the defense of this cause of action by April 14, 2006. Petitioner shall file any response by April 21, 2006.
>
> 6. All other relief not specifically granted is denied.

McNabb's attorney complied with the order and submitted an affidavit regarding attorney's fees.

Castro did not file a response to the affidavit but instead filed a motion for reconsideration of the

dismissal. On April 24, Castro amended her motion to include an objection to the fees and a motion

for new trial, both of which were denied at a hearing on June 1. On December 21, the court entered an order awarding attorney's fees to McNabb in the amount of $30,000. This appeal follows.

## DISMISSAL OF THE SUIT

Castro brings five issues challenging the dismissal of her declaratory judgment action and two issues pertaining to the award of attorney's fees. We will first address Issue Two wherein Castro argues that the trial court erred in basing the dismissal of her suit on Section 101.106(f) of the Civil Practice and Remedies Code.

*Dismissal under Section 101.106(f)*

Section 101.106, entitled "Election of Remedies," provides:

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

(c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit or recovery from any employee of the same governmental unit regarding the same subject matter.

(d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files

amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX.CIV.PRAC.&REM.CODE ANN. § 101.106 (Vernon 2005). Subsections (e) and (f) are critical to our analysis.

Section 101.106 forces a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone. It thus narrows the issues for trial and reduces delay and duplicative litigation costs. *Mission Consolidated Independent School District v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). Under this election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when suit is filed against the governmental unit only, *id.* § 101.106(a); (2) when suit is filed against both the governmental unit and its employee, *id.* § 101.106(e); or (3) when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit, *id.* § 101.106(f). *Mission Consolidated ISD*, 253 S.W.3d at 656.

Castro argues that Section 101.106(f) is inapplicable because her declaratory judgment suit against McNabb does not fall within the Tort Claims Act. The Supreme Court addressed a similar argument in *Mission Consolidated ISD*. There, the plaintiff sued the District for violations of the Texas Commission on Human Rights Act (TCHRA).[6] She also sued an individual District employee for defamation, negligent misrepresentation, and fraud. She sued the District and the employee jointly for intentional infliction of emotional distress. Relying on Section 101.106(b), the District sought dismissal of the claims. The trial court denied the District's jurisdictional pleas and the District appealed. The court of appeals affirmed, finding that the Tort Claims Act's election-of-

---

[6] *See* TEX.LAB.CODE ANN. §§ 21.001-21.556 (Vernon 2006 & Vernon Supp. 2009).

remedies scheme is applicable only when the plaintiff's suit is one for which the Act actually waives immunity. *Mission Consolidated Independent School District v. Garcia*, 166 S.W.3d 902, 905 (Tex.App.--Corpus Christi 2005). In reaching this conclusion, the intermediate court focused on the "under this chapter" language found in various subsections of Section 101.106. *Id.* at 905. Because the plaintiff's suit against the District was not one for which the Act waives immunity, the court held that Section 101.106 was inapplicable. *Id.* The Supreme Court disagreed, holding it had never interpreted the phrase "under this chapter" to encompass only those tort claims for which the Tort Claims Act waives immunity. *Mission Consolidated ISD*, 253 S.W.3d at 658. Because the Tort Claims Act is the only avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be "under [the Tort Claims Act]" for purposes of Section 101.106. *Id*. at 659. By virtue of subsection (e), the employee would be entitled to dismissal of the suit against him upon the filing of a motion to dismiss by the District. *Id.* But the District had not sought the employee's dismissal under subsection (e) and the employee had not filed his own motion to dismiss under subsection (f). *Id.* If the District had obtained the employee's dismissal under subsection (e), all of the tort claims against the District would be barred. *Id.* The Supreme Court also held that claims against the government brought pursuant to waivers of sovereign immunity that exist apart from the Tort Claims Act are not brought "under [the Tort Claims Act]." *Id.* Thus, the plaintiff's claim filed under TCHRA was not "a suit filed under this chapter" because TCHRA provides a statutory remedy for unlawful discrimination. The court concluded that the election-of-remedies scheme was inapplicable to that claim. It also determined that the plaintiff's suit under TCHRA was not barred by Section 101.106(b) because TCHRA clearly and unambiguously waives immunity. *Id.* at 660.

Focusing on *Mission ISD's* holding with respect to the TCHRA claim, Castro argues that her

petition for declaratory judgment is not a suit under the Tort Claims Act because the Declaratory Judgment Act provides a statutory remedy. The Supreme Court's holding is based upon its construction of subsection (e) while McNabb filed his motion to dismiss pursuant to subsection (f). Section 101.106(f) requires a showing that the suit "could have been brought under this chapter against the governmental unit . . . ." Although the Supreme Court did not address subsection (f) in *Mission ISD*, we believe its holding applies equally to that subsection. The issue, then, is whether Castro's suit could have been "brought under this chapter" against the City of El Paso. It is well established that the Declaratory Judgments Act waives sovereign immunity for governmental entities. *Texas Education Agency v. Leeper*, 893 S.W.2d 432, 436 (Tex. 1994). And it provides a statutory remedy for a person seeking to compel state officers to act within their official capacity. We conclude that Castro's declaratory judgment action could not have been brought against the City of El Paso "under this chapter" for purposes of Section 101.106(f). Accordingly, the trial court erred in dismissing Castro's suit pursuant to that section. We sustain Issue Two. But our resolution of this issue does not end the inquiry. We turn now to McNabb's jurisdictional arguments.

## PLEA TO THE JURISDICTION

A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *City of El Paso v. Maddox*, 276 S.W.3d 66, 70 (Tex.App.--El Paso 2008, pet. denied). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 446 (Tex. 1993). Whether a court has subject matter jurisdiction is a question of law which we review *de novo*. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Maddox*, 276 S.W.3d at 70. We consider the allegations in the petition and accept them as true. *Maddox*, 276 S.W.3d at

70. When deciding a plea to the jurisdiction, a court is not required to look solely to the pleadings, but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland*, 34 S.W.3d at 555.

## The Declaratory Judgments Act

The Declaratory Judgments Act is a procedural device for deciding cases that are within the trial court's jurisdiction. *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994). The stated purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX.CIV.PRAC.&REM.CODE ANN. § 37.002(b)(Vernon 2008); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). A declaratory judgment is appropriate only where there is a justiciable controversy about the rights and status of the parties and the declaration will resolve the controversy. *Bonham State Bank*, 907 S.W.2d at 467. To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute. *Id.* The Act does not empower courts to issue advisory opinions. *Brooks v. Northglen Association*, 141 S.W.3d 158, 164 (Tex. 2004).

## McNabb's Duties to Castro

Castro sought declarations that McNabb had an attorney-client relationship with her and owed her a fiduciary duty to make a full and complete disclosure prior to seeking a waiver of his conflict of interest with respect to the Rodriguez litigation. Castro argues that she has standing to seek a declaratory judgment as a member of the City Council.

Castro's appellate counsel has done a commendable job of re-shaping Castro's pleadings in an effort to demonstrate that the trial court had jurisdiction of her suit. But the declarations Castro seeks cannot be considered apart from her accusations about McNabb and her threats to sue him for

legal malpractice and breach of fiduciary duty. Castro claims that these declarations are related to her request for the documents. Another view is that Castro sought the documents to obtain evidence which would support her allegations of malfeasance against McNabb. Under these circumstances, Castro is using her petition for declaratory judgment to establish a critical element in these tort causes of action. Castro, as an individual city council member, lacks standing to investigate McNabb or sue him for any conduct committed by him in connection with his representation of the City in the Rodriguez suit. Additionally, the second declaration she seeks is moot and would amount to an advisory opinion because the City Council has waived the potential conflict of interest and the Rodriguez suit was settled. The Declaratory Judgment Act does not empower courts to issue advisory opinions. *Brooks*, 141 S.W.3d at 164.

*Exclusion of Castro from Executive Sessions*

Castro also sought a declaration that her exclusion from certain executive sessions was unlawful. While McNabb provides non-binding advice to the City Council, decisions regarding executive sessions belong to the City Council itself. *See* TEX. GOV'T CODE ANN. § 551.071 (providing that a governmental body may not conduct a private consultation with its attorney except when the governmental body seeks the advice of its attorney about pending or contemplated litigation or a settlement offer, or on a matter in which the duty of the attorney under the Texas Disciplinary Rules of Professional Conduct clearly conflicts with Chapter 551). A declaration against McNabb would not bind the City or the City Council and would be purely advisory. The trial court does not have jurisdiction to issue an advisory decision. *Brooks*, 141 S.W.3d at 164.

*Castro's Review of the Rodriguez File*

We turn now to the primary issue in this case--whether the trial court lacked subject matter jurisdiction of Castro's request for declarations that (1) she was entitled to review the Rodriguez

litigation file with the assistance of private counsel, and (2) the Texas Public Information Act does not apply to her request to review this file. McNabb maintains that the trial court lacked subject matter jurisdiction to make these declarations because there is no justiciable controversy between the parties. Citing Section 552.3215 of the TPIA, he argues that because Castro did not name the City as a party, the controversy would not be resolved by these declarations. The Attorney General found in its informal letter ruling that Castro's request to review documents in the possession of the City Attorney was not governed by the TPIA because she had made the request in her official capacity as a member of the City Council and she had an inherent right to review the file in that capacity. But the Attorney General determined that Castro must maintain the privileged documents in the same manner as they are maintained by the City in order to avoid waiver of the attorney-client privilege. This would preclude disclosure of confidential information to a person who is not authorized to inspect the records. The Attorney General's ruling does not address whether the records could be disclosed to Castro's private legal counsel or whether Castro is restricted to the remedies set forth in Chapter 552 of the Government Code. We need not address McNabb's argument that Section 552.3215 applies to Castro's suit because we conclude that even if it doesn't apply, Castro was required to join the City as a party.

There are two prerequisites for a declaratory judgment action: (1) there must be a real controversy between the parties and (2) the controversy must be one that will actually be determined by the judicial declaration sought. *Houston Chronicle Publishing Company v. Thomas*, 196 S.W.3d 396, 401 (Tex.App.--Houston [1st Dist.] 2006, no pet.); *see* TEX.CIV.PRAC.&REM.CODE ANN. § 37.008 ("The court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding."). And Section 37.006(a) of the Civil Practice and Remedies Code provides:

(a) When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding.

Tex.Civ.Prac.&Rem.Code Ann. § 37.006(a).

The Rodriguez litigation file and the privileged information it contains belong to the City of El Paso, not to the City Attorney. A declaratory judgment against McNabb individually would not bind the City and would merely be advisory. Citing *Texas A&M University v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007), Castro argues that a suit filed against an official in his official capacity is effectively a suit against the governmental entity. In that case, a former employee sued a state university, the state engineering experiment station where the former employee had worked, and his former supervisor for breach of settlement agreement regarding an employment dispute. One issue addressed by the Supreme Court was whether appellate courts have jurisdiction of a government official's interlocutory appeal from the trial court's denial of a plea to the jurisdiction based on sovereign immunity. *Id.* at 845. In construing Section 51.014(a) of the Texas Civil Practice and Remedies Code to provide for an interlocutory appeal by a governmental official, the Supreme Court held that:

> When a state official files a plea to the jurisdiction, the official is invoking the sovereign immunity from suit held by the government itself. It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.' [Citations omitted]. A suit against a state official in his official capacity 'is not a suit against the official personally, for the real party in interest is the entity.' [Citation omitted]. Such a suit actually seeks to impose liability against the governmental unit rather than on the individual specifically named and 'is, in all respects other than name, . . . a suit against the entity.' [Citation omitted]. *Id.* at 844.

This discussion is inapplicable here because McNabb did not invoke the doctrine of sovereign immunity in his plea to the jurisdiction. He sought dismissal on the ground that the trial court lacked subject matter jurisdiction. Moreover, Castro has made it clear that her complaint is with McNabb

personally and she did not amend her pleadings to name the City as a party even after McNabb filed a motion to dismiss. Finally, suits to compel state officers to act within their official capacity do not attempt to subject the State to liability and are not suits against the state. *See Texas Natural Resource Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). We therefore conclude that Castro's declaratory judgment action against McNabb is not a suit against the City. The Declaratory Judgments Act expressly provides that a declaration does not prejudice the rights of a person not a party to the proceeding. TEX.CIV.PRAC.&REM.CODE ANN. § 37.006(a). Because Castro failed to make the City a party to this suit, any decision by the trial court on the merits would not have resolved the controversy and would have been advisory.

*Application of the TPIA*

Castro also sought a declaration that the TPIA does not apply to her request for information related to the Rodriguez litigation file. Given our conclusion that the trial court lacked jurisdiction to declare that Castro has a right to review this information with the assistance of her private attorney, it follows that the court lacked jurisdiction to declare that the TPIA does not apply to her request. A suit to produce information under the Texas Government Code must be filed against the governmental body withholding the information. TEX.GOV'T CODE ANN. § 552.3215. We recognize that Castro has taken the position that the TPIA does not apply to her request, but such a declaration against McNabb would not bind the City. Thus, the trial court does not have jurisdiction to make the requested declaration.

**ASSESSMENT OF ATTORNEY'S FEES**

In Issues Six and Seven, Castro contends that the trial court erred in assessing attorney's fees against her because she brought the suit in her official capacity. She also argues that if the trial court lacked subject matter jurisdiction of the declaratory judgment action, then it also lacked jurisdiction

to award attorney's fees. We will address the latter argument first.

The Declaratory Judgments Act provides that:

In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.

TEX.CIV.PRAC.&REM.CODE ANN. § 37.009. In a declaratory judgment action, the decision to grant or deny attorney's fees is solely within the discretion of the trial court. *Neeley v. West Orange-Cove Consolidated Independent School District*, 176 S.W.3d 746, 799 (Tex. 2005). Under Section 37.009, a trial court may exercise its discretion to award attorney's fees to either the prevailing or the nonprevailing party. *See Barshop v. Medina County Underground Water Conservation District*, 925 S.W.2d 618, 637-38 (Tex. 1996). The requirements that fees be reasonable and necessary are matters of fact, while the requirements that fees be equitable and just are matters of law. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

Castro directs us to several cases in support of her argument that the trial court lacked jurisdiction to award fees: *Angell v. City of Garland*, No. 05-89-001174-CV, 1991 WL 158667 (Tex.App.--Dallas 1991, writ dism'd w.o.j.)(op. on reh'g); *Gregg County Appraisal District v. Laidlaw Waste Systems, Inc.*, 907 S.W.2d 12, 21 (Tex.App.--Tyler 1995, writ denied); *Ankrom v. Dallas Cowboys Football Club, Ltd.*, 900 S.W.2d 75, 81 (Tex.App.--Dallas 1995, writ denied); *Commissioners Court of Brown County v. Grigsby*, No. 11-01-00254-CV, 2002 WL 32344508 at *4 (Tex.App.--Eastland 2002, no pet.); *North East Independent School District v. Kelley*, 277 S.W.3d 442, 445 (Tex.App.--San Antonio 2008, no pet.); and *It's the Berrys, LLC v. Edom Corner LLC*, 271 S.W.3d 765, 772 (Tex.App.--Amarillo 2008, no pet.). We respectfully decline to follow these cases because not a single one of them examines the plain language of Section 37.009 which authorizes a trial court to award attorney's fees "[i]n any proceeding under this chapter." The statute

does not require a judgment on the merits of the dispute as a prerequisite to a fee award. Castro invoked the entire Declaratory Judgments Act when she filed suit. Her failure to make the City a party to the suit meant that any declaration made by the trial court would have been an advisory opinion. Our determination that the trial court lacked jurisdiction to render the specific declarations sought does not change the nature of the proceedings below. Because this was a proceeding under the Declaratory Judgments Act, the trial court properly exercised jurisdiction under Section 37.009 to award attorney's fees to McNabb.

Finally, we turn to Castro's argument that attorney's fees may not be awarded against public officials. The trial court did not award attorney's fees against Castro in her official capacity because the court expressly found that she was not acting in her official capacity. This conclusion was based on its finding that Castro had not obtained authorization of the City Council to file the suit.

Acting pursuant to Section 1.5 of the City Charter, Castro provided the City with notice of her intent to file a declaratory judgment suit related to her right to review the Rodriguez litigation file. She also gave notice that she would seek a judicial declaration regarding her entitlement "pursuant to the grant of authority in Section 3.8 of the City Charter . . . to review any and all documents prepared by or for the City of El Paso in connection with litigation claims against the City." Section 3.8 of the City Charter provides that:

> The council shall have the express power to inquire into the official conduct of any department, officer or employee of the City and for that purpose shall have the power to administer oaths, subpoena witnesses and compel the production of evidence material to the inquiry.

In her petition, Castro did not seek a declaration related to Section 3.8. But she did make numerous allegations about the official conduct of McNabb. Her request to review the Rodriguez litigation file is based on these allegations and Castro's intent to investigate McNabb's official conduct. Castro

made her intentions clear when she stated in response to McNabb's motion to dismiss:

> The City of El Paso states in their Brief in Support of their Motion to Dismiss that the controversy in this lawsuit arises from *Rita Rodriguez v. The City of El Paso.* This statement is incorrect. This lawsuit arises from the actions of the Respondent, Charles McNabb, in the face of legitimate and probing questions concerning his behavior and actions regarding the Rodriguez settlement. A close inspection of Petitioner's claims listed above shows that *Petitioner's only concern in this action is Respondent McNabb's behavior before, during, and after the Rodriguez settlement, particularly as it implicates the withholding of litigation documents requested by Representative Castro.* [Emphasis added].

An individual city council member is not authorized to take action under Section 3.8 because that section vests authority in the City Council, not individual council members, to inquire into the official conduct of any department, officer or city employee. To the extent Castro's suit was based upon her purported authority under Section 3.8, the trial court correctly determined that she was not authorized to bring suit and that she was not acting in her official capacity.

Castro argues, however, that she has authority as an individual city council member to file a declaratory judgment action in order to clarify her legal relationship with the City Attorney and to determine whether she has a right to have private counsel review the litigation file with her. If Castro had limited her suit to these issues, we might be more persuaded by her argument, but the declarations Castro seeks are inextricably bound to her assertions about the Rodriguez settlement and her allegations that McNabb acted improperly in that regard. As an individual city council member, Castro lacks authority to investigate McNabb's official conduct. The trial court did not err by concluding that Castro did not act in her official capacity when she filed the declaratory judgment suit. We overrule Issues Six and Seven. It is unnecessary to address the remaining issues raised by the parties.

Having sustained Issue Two, we reverse that portion of the trial court's order dismissing Castro's suit pursuant to Section 101.106(f). Because we have determined that the trial court lacked

jurisdiction to grant the relief requested by Castro, we render judgment dismissing Castro's suit for want of subject matter jurisdiction. Having overruled Issues Six and Seven, we affirm the portion of the trial court's order awarding attorney's fees to McNabb.

October 28, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.